Good morning. May it please the court, counsel. My name is Molly Quinn, and I represent the appellant, Patrick Medearis. We're asking the court to vacate Mr. Medearis' conviction for being a prohibited person in possession of firearms and reverse and remand for a new trial or a new sentencing hearing. The district court erred in admitting three types of evidence, hearsay evidence, evidence of flight, and Mr. Medearis' statements, and in finding that he had two prior convictions that would have been 33 to 41 months all the way up to 92 to 115 months. And I do actually want to start with the sentencing issues, specifically the crime of violence issue. Now, Mr. Medearis was convicted of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer in violation of 18 U.S.C. 111 A and B. And it is undisputed in this case that he was convicted of that aggravated version of the statute under 111 B. But 111 B does not qualify as a crime of violence under either the force clause in 4B 1.2 or as generic aggravated assault in the same guideline. And I'll start with the force clause argument. This statute, 111 B, is overbroad under the force clause as it has now been interpreted by the Supreme Court in the Borden case, because 111 B is a general intent crime. There has been a lot of litigation in this court and kind of developing opinions in this area. But ultimately, we know from the Gustus or Gustus opinion that this is. Speak from what? We know from what? It's an opinion. It's Gustus, G-U-S-T-U-S. And that is a recent opinion that said, we recognize that we've. Our court or? Yes, it's from the Eighth Circuit. Thank you. That recognizes that, at least in Judge Kelly's concurring opinion, that there have been conflicting opinions kind of throughout this court's history on whether this offense is a specific intent crime or a general intent crime. Under the doctrine of the first panel opinion, this is a general intent crime. We know that because in that case, the issue was whether voluntary intoxication was a defense. So we know from this court's case law that despite how strong the language of the statute may seem, that this is actually a general intent crime. And now, Borden, I would. The government says that doesn't matter. And does the Gustus majority say it matters? The Gustus majority says that this is a general intent crime and cites that earliest panel opinion. And so. I'm sorry. They say what? That 111 is a general intent crime, not a specific intent crime. That doesn't make it. I don't get the overbreadth with respect to the force clause just because it's a general intent crime. If we're talking about the subpart of divisible, it's not separate, A and B. I don't understand the point. I know all this stuff is floating around. Sure. But most of the arguments are inconsistent with our decisions that control the panel, like Figueroa. OK, so Figueroa, I believe, is a controlled substance offense case. That's the other issue. I'm not aware and I don't see in the briefing that the parties were aware that there has been an Eighth Circuit case on whether assault on a federal officer, even the regular offense under 111A, or this aggravated version under 111B, is a crime of violence either before or after Borden. But setting that aside, under Borden, which is a Supreme Court case that held that the force clause requires more than reckless conduct, under the rationale of that case, and when you actually look at what the, I call it assault on a federal officer, a shorthand, but it includes those other verbs as well, even under 111B doesn't meet the required mental state as explained in the court's opinion in Borden. And that- This is Judge Corbison, all right? Assuming, OK, this is a general intent crime, and it's assault, a general intent assault, is that fair? It is a general intent crime, and the statute includes more than just assault. It does include that resisting, imposing, impeding, and so on. Well, don't we in the general intent, at least in the assault cases, don't we require a voluntariness and intentionality? I mean, our jury instructions, which I understand are not controlling, certainly do. And I think other circuits, maybe the Fifth Circuit as one, have found contrary to your argument. Is that fair? And I understand we may not be bound by those. So yes, the language does. A general intent crime has to be intentional, but only in the sense that the acts taken have to be volitional, meaning that they can't be accidental. And when you look at kind of how general intent is just Is the intentional different from reckless, then? It is because the reckless goes to kind of what the defendant or the perpetrator intends as the result. So there's a distinction as it's developed in the case law, particularly after Borden, between a volitional act on the one hand, and then the consequences of it that the defendant didn't have to intend. And that's kind of what we're focusing on here, which is that the defendant does not have to intend the consequences, even under general intent. And so I do have to address each prong of 111B, which covers use of a deadly weapon, deadly or dangerous weapon, or inflicting bodily injury. Both prongs can, as they are interpreted, tolerate reckless conduct when we focus on kind of the actor's subjective intent or what they want to result or what is realistic to expect to result. And starting with the infliction of injury prong, this statute can encompass taking a volitional action or an intentional action in that sense that recklessly causes injury. And the best example we have of that is actually from this court's interpretation of the neighboring assault resulting in serious bodily injury statute, which interprets common law assault, which is part of this offense, just part of it. And what that means, in the Ashley case says that the general intent for assault resulting in serious bodily injury can be committed where the defendant purposely drives while drunk, does so knowing the brakes are bad, but recklessly causes injury to another person. So we know that as the general intent is interpreted under federal law, at least as it relates to that assault prong, can encompass an admittedly intentional action of driving under those circumstances, but that recklessly results in injury. What about, you know, and I know Hansen's a bazillion years old, but it does say that 111B cannot be recklessly committed because it requires an intent to assault. And you know, it is our court, and we've said it, and we've cited it. And I mean, like I said, I know 1980s is really like, I mean, I was not even in law school yet, so that tells you how long ago that was. But it's still out there. Can we write around that? And how do we write around it? We just say Borden changes the lay of the land such that that doesn't apply anymore? I think Borden is one answer. And then I think, I don't have that language right in front of me, Your Honor. I apologize. But I hate to tell you, but the direct quote that it cannot be committed recklessly because it requires, quote, an intent to assault, you know, which is pretty tough, you know? That is, I guess I would say that that case is also the one that says that this is a general intent. And so I would say that we have to interpret references to intent with that backdrop, meaning, again, a lack of an accident or a volitional act. Yeah, and honestly, in 1980, these issues weren't really on anybody's mind. Even as a theoretical, I'm going to write a law review article kind of a thing, all right? Right. I think one kind of general principle, before I move on to the deadly or dangerous weapon prong, one general principle to keep in mind is that under the categorical approach, we're looking at kind of the least culpable act tolerated under the statute and comparing that to the force clause here, as we're talking about. And so all the circuits that have considered this have said it's divisible and that we apply the modified categorical approach. I agree that it's divisible among the three levels of offense. I don't believe it. I didn't see an argument, at least in the briefing, that 111B itself is internally divisible between the inflicting injury and the use of a deadly or dangerous weapon. I ultimately don't think it matters. Unless there's a further question on that, I'll move on to that. I believe the language is, uses a deadly or dangerous weapon. And again, kind of there is some language in cases saying that has to be intentional. But intent in the context of this statute means general intent, meaning a volitional or lack of accident action. But it doesn't require a particular intention or purpose on the part of the defendant in terms of the result that it will have. And I have a couple examples of that, of this volitionally using a weapon. The best example for us would be a vehicle in a way that is reckless. But where the actual use itself was non-accidental. And there is the Arrington case is actually a DC circuit case that is cited favorably by this court in Wilkins. I believe both of those are cited in the brief. And the Arrington case said, of course, there has to be an intent to use the weapon. But there doesn't have to be an intent that you use it as a weapon. It's kind of a subtle distinction. Cited favorably in what? In the Wilkins case. And then there in the Yates case is another case that is cited in the briefing just for general propositions about this statute. That is an instance where a dangerous weapon is a vehicle. There is one more case that admittedly I don't see cited in the briefing. That is the Wallace case. I believe it is cited within Wilkins. That's a 2017 opinion. I can give the cite or provide it later in a 28-J. That is a case involving a vehicle where kind of the line in the sand is that flight enough doesn't make this the use of a deadly or dangerous weapon. Using a vehicle just as a simple mode of transportation doesn't, but basically anything beyond that can qualify as the use of a deadly or dangerous weapon under this statute. So kind of taking a step back, we have a general intent crime. And we have Borden telling us, look, the force clause encompasses purposeful and knowing. And reckless offenses don't qualify because they're not directed or targeted at the person of another in the way of the force clause requires. And before I sit down, I do want to direct the court to the Frazier case. This is, I'm not aware of any post-Borden opinions on this statute in any circuits. This is an Eighth Circuit case. It's cited in the reply brief. And this is a case where the court interpreted an Iowa statute. You don't have to talk about the cases that are in the briefs, please. OK. I just. You've got all these other issues. Are you not going to go to anything but this? I will briefly discuss the hearsay issue. The district court erred in admitting hearsay evidence of Mr. Medeiros' alleged prior firearm possession. This came in through Officer Peters' testimony. He testified, contrary to the pretrial ruling saying that evidence of prior firearms possession can't come in unless the witnesses who allegedly saw it testified. He said, I was informed that the defendant did have or might possess a firearm in that vicinity, referring to the South Antelope area. This was inadmissible hearsay. It was based on statements from. Well, not if it's legitimate explanation of the reason for investigating. I agree as a general proposition that an explanation of a reason. We're dealing with that as applied. So don't. I don't. Generalities don't solve these problems. And I don't agree that that applies here. I'd note the government never offered it for that purpose. That was something the district court came up with. And I would direct the court, the Blake case and the Holmes case, both say, look, evidence is not unless the propriety of the investigation is put at issue. And I haven't, I don't believe that the propriety. What's wrong with the district court's rationale? I don't care who argued what. I think. Did you review the district court's rationale? Understood. OK, so what's wrong with it? The propriety of the investigation was not at issue in this case. That is not something that the defense placed at issue. And under these two cases. Well, how would it be placed at issue when we're talking about the government's case, right? That if the defense places it at issue. If the defense what? If the defense places it at issue. You can't do it till rebuttal? There are cases where that have said, look, the opening statement was enough to place this an issue. That didn't happen here. There's nothing that placed the propriety of the investigation at issue. And therefore, this evidence isn't relevant for that purpose under the Blake case and the Holmes case. And even with a limiting instruction to that effect, because it's not relevant for that, under the Blake case, there was a limiting instruction twice. Pretty much very similar to this. But that still is reversible error. And unless there are further questions, I am quite a bit into the rebuttal. I would reserve the remainder. Thank you. Morning. May it please the Court. My friend and colleague, Ms. Quinn. I'm Kevin Colliner from the US Attorney's Office representing the government in this case. We are asking that the conviction and sentence be affirmed. Your Honor, there's an important aspect of 111. The statutory language is being overlooked in this case, which is that the operative elements start with the word forcibly. That's a statutory term. That's a reason why, in 1975, the United States Supreme Court in FIOLA found that, although there isn't required a specific intent that the defendant know that the person they're assaulting, impeding, et cetera, is a federal officer, there has to be an intent to assault. And from that, this court, I believe, first in 1977 in Long Soldier, and all the way up until Judge Loken, the opinion you authored here in 2022 in Wilkins, has said that a violation of 111 requires the government to prove that an act was willful, voluntarily and intentionally. Now, what does that mean with respect to borden and recklessness? Well, Judge Erickson, you talked about what Hanson says about that. Voluntary and willfully is generally the exact opposite of recklessness, right? The court's talked about that in other contexts. There's a case not cited here because it deals with, excuse me, securities law. It's O'Hagan, where the court says just that. It's either reckless or it's voluntary. But boredom itself is instructive in that there the plurality talks about these four culpability levels. Excuse me. Famously, recklessness has been kind of an ambiguous culpability level. So the Supreme Court, at least the authors in the plurality opinion, chose to define it. They said it means consciously disregarding a substantial and unjustifiable risk in gross deviation from accepted standards. And it contrasts that with purpose and knowledge, which are the most culpable levels in criminal law. So this Court has, I think, over a dozen times over the years, talked about 111 as requiring willfulness in each of its subparts. And the Eighth Circuit Pattern Jury Instruction includes as an element that the assault was done voluntarily, intentionally. I know that's not controlling on the Court, but it does cite the long history of this Court on this question. So this simply is not a crime that can be committed recklessly in any of its forms. Here, we're focused on the form that carries a 20-year maximum penalty, the form that involves the use of a deadly or dangerous weapon. Well, of course, as the Supreme Court reminds us in the variety of recent cases, we also have to focus on the language here of 4B1.2. What are we trying to qualify here? We're trying to qualify any offense under federal state law punishable by imprisonment for a term exceeding one year that has an element, the use, the attempted use, or threatened use, of physical force against the person of another. Physical force means a violent force that's a force capable of causing physical pain or injury to another. That's what the U.S. Supreme Court said in Curtis Johnson v. United States in 2010. All that adds up to is when you threaten here or intimidate using a dangerous weapon, you have willfully and intentionally found yourself in a scenario that And there is no hypothetical that could allow someone to meet all of those elements and be a recklessness crime. It's an odd place for the government to be standing up and saying that the mens rea for a federal offense should be higher, but that's the outcome of almost 50 years of jurisprudence in this Court, uninterrupted jurisprudence on the question of the mens rea of this particular assault statute. Now, there's been discussion in the briefings and discussion here today about how the Court has talked about at times misleadingly. I agree with Judge Kelly in her concurrence in the Gustis case. It is a little confusing. Is it general intent? Is it specific intent? What does that mean? Well, that question has come up in the context of whether a defendant is able to use an intoxication defense in one of these trials because, of course, if it's a specific intent crime, there's a certain defense that's allowed. That's the relevance of that question of how it's typified by the Court, how the mens rea is typified. It's not particularly instructive in terms of whether it's a recklessness crime categorically as defined by Borden. One more point on the forcibly thing. Another thing that Borden shed light on, the plurality opinion, is that use of force denotes volitional conduct. That's a quote directly from Borden. In other words, as this Court has interpreted a, frankly, a kind of a one-off line in FIOLA in 1975 that Justice Stewart wrote about how this statute requires an intent to assault, this Court, for all the years that's followed, has interpreted that to mean that it's willful and intentional. The Supreme Court confirmed that in Borden by saying, you know, when a statute requires forcibly, that forcibly is, in and of itself, a volitional element. In other words, Borden confirmed that this Court's had a right for 50 years in including that volitional language, that intentional willful language. Now, this Court hasn't stood alone. In fact, there are no cases cited in which any circuit has found that this is not a crime of violence, especially under the subsection B. Certainly no circuit that's found that it's divisible. I know that's argued in the briefing, and it seems somewhat conceded during argument today. I'm not sure that it's actually conceded. But that is a direct question that's been decided by virtually every circuit, all in unison, that this is a divisible statute. All the circuits that have decided whether this is a crime of violence, also in unison. Now, much is made that no circuits have decided this question, including this Court post-Borden. Well, of course, Borden's fresh. And these cases are working their way up to circuit courts. There are some district courts that have fairly recently decided these issues. But again, not in the briefing, all in unison that this is a crime of violence. And frankly, that Borden doesn't impact the analysis because this is not a recklessness offense. Can we talk about the hearsay issue? Yeah. Sure. So the hearsay issue, in terms of the statement about the prior incident involving a firearm, is that? Yeah. So there was some discussion in the pretrial hearing. There was a motion limiting on this question. Can the government bring up this prior incident in which Mr. Medeiros was alleged to have had a firearm? The reason the government wanted to bring it up was because that explained why an officer shows up looking, hunting for Medeiros that morning, which leads Medeiros to jump into a car in the first pursuit. So we wanted to bring it up for background. That's sort of explained. It's granted in part and denied in part. That's an interesting argument that's made by the government as to why this should come in. Because I was a trial judge for almost 25 years, right? And early on in my career, it kind of was the fact that the government was always just trying to explain what happened. And so, well, we want to know why the police showed up. And so they let that in, just the basic argument you're making now. Starting in about 2000, and you've got like in 2003, we all of a sudden, courts of appeals started directing us trial judges, as I was at that time, that hold on, wait a minute. Explaining the investigation in and of itself isn't enough. It's got to have some relevance to the investigation. And it's got to be somehow placed in the issue. Because the potential for great harm exists. And the benefit of it is really quite small, all right? And so after those cases came down, it sort of was when I didn't drop the ball, which Judge Loken can tell me I did from time to time. But when I didn't drop the ball, I just says, well, no. All you really need to do is say we had received a complaint that left us with the defendant as a person of interest. And so we made a stop, right? And that's not what the judge, that's not what happened here. I mean, in here, you're sitting here talking about, well, we have a firearm question, and that has prejudice to it. So why was this not outweighed by the prejudice? Or it's relevant, it's probably value outweighed by its prejudice. Well, so we have two comments that happened throughout the trial. One is the prosecutor's comment at the beginning of his opening. I think a fair understanding of the prosecutor at that point was that he wasn't, based on the motion in limine and the order, wasn't allowed to talk about the specifics of the incident. And I see the argument that, well, he did mention there may have been a firearm, I think is the phrase. And firearm is the question here. I get it, but I think it's a fair reading of the prosecutor, a fair understanding of that granted in part, denied in part discussion order. Of course, an opening isn't evidence, but it does, in certain circumstances, can certainly be troublesome. There's one more instance of it. That's when the officer is testifying and says it in response to kind of an open-ended question. There's an objection. The objection sustained, perhaps confirming that Judge Lange's, in this case, Judge Lange's understanding of his motion in limine allowed basics on it. He didn't sustain the objection. He overruled the objection. But then he had a limiting order on that, told the jury that this is not to be used for substantive proof that the defendant had a firearm on a prior occasion. Of course, lots of case law in this court that juries are assumed to hear and understand and follow orders. That's the long and short of the hearsay evidence. And we certainly don't think that it was in violation of what we think, number one, it wasn't hearsay. We think it wasn't prejudicial. Because the jury learned about the gun during the flight. Right. So your argument is, well, knowing about a gun the day before didn't mean nothing. Yeah. He admits in his interview that was introduced at trial that he touched the guns, right? There's a question that the officers ask. He doesn't say, I had no idea there were guns in this vehicle. He knows there were guns. He says, they weren't mine. I touched the guns. Now, his argument is, I think his argument is, the car was sitting there. It wasn't mine. It was a car that was to be worked on. I didn't own it. And I jumped in it, and all the things in that car were mine. I just point out, in terms of why the jury probably found the way they did, a point that Judge Lang made during the sentencing is, it is kind of an odd notion that you would drop a car off to be worked on, and you'd leave your guns on the passenger side, especially long rifles, along with drugs and so forth inside. It's a reason why the jury obviously heard that evidence and rejected that sort of defense. But the fact that he was in the vicinity of guns really wasn't at issue in this case. Unless there are any other questions, I'll take my seat. Thank you, Your Honors. Thank you, counsel. Roberta. Thank you. Very briefly on the crime of violence issue, there is emphasis on this word forcibly at the beginning of 111. And I would just direct the court to the street opinion cited in the briefs, that this word forced in this statute doesn't mean as much as it does in other contexts. That this force element may be satisfied by basically any actual physical contact, or just a threat or a display of aggression that is sufficient to place in another person fear of pain or bodily harm. That it doesn't, consistent with that general intent requirement, doesn't require that the defendant, the actor himself, kind of intend that effect. That this is something that regardless of the person's subjective intent, either resulted in contact or placed a person in fear. I do see that I'm out of time. Is there a case that's picked up on this argument? I understand it. I guess I'm just citing this court's explanation of what force means in this context. I don't have a case kind of applying that here, if that was the question. Thank you.